RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0017P (6th Cir.)
File Name: 01a0017p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
       _Plaintiff-Appellee,_

       _v._             No. 99-5567

VERNON L. MURPHY,
       _Defendant-Appellant._

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 98-00013—Thomas G. Hull, District Judge.

Argued: September 15, 2000

Decided and Filed: January 16, 2001

Before: JONES, SILER, and CLAY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Tim S. Moore, Newport, Tennessee, for Appellant. Dan R. Smith, ASSISTANT UNITED STATES ATTORNEY, Johnson City, Tennessee, for Appellee. **ON BRIEF:** Tim S. Moore, Newport, Tennessee, for Appellant. Dan R. Smith, ASSISTANT UNITED STATES ATTORNEY, Johnson City, Tennessee, for Appellee.

---

**OPINION**

---

CLAY, Circuit Judge.  Defendant, Vernon Lee Murphy, appeals from his conviction and sentence for distribution of cocaine base crack and possession of cocaine base crack with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Defendant alleges that the district court erroneously (1) admitted evidence in violation of Federal Rule of Evidence 404(b), (2) denied Defendant's motion to dismiss the indictment pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161-74, (3) denied Defendant's motion to suppress evidence, and (4) calculated Defendant's criminal history category pursuant to USSG § 4A1.1.  For the reasons stated below, this Court **AFFIRMS** Defendant's conviction, but **REVERSES** and **REMANDS** with respect to Defendant's sentencing so that the district court may determine whether Defendant served any portion of his sentence for his prior misdemeanor convictions as required by USSG § 4A1.2.

**BACKGROUND**

On September 17, 1997, agents from the First Judicial District Drug Task Force ("task force agents") placed an electronic transmitting device on a confidential informant to record a drug transaction with Defendant.  The informant was provided with $500 in marked bills and placed under surveillance.  On the same day, the confidential informant paged Defendant and inquired about purchasing $500 worth of crack cocaine.  At the time, Defendant was residing at the Super 8 Motel in Johnson City, Tennessee.  Defendant told the informant to wait thirty minutes and then meet him at the parking lot of the Harbor House Restaurant, located next to the Super 8 Motel.

Task force agents conducting surveillance observed Defendant leave the Super 8 Motel, stop briefly at his vehicle, which was parked in the motel lot, and proceed to walk to the parking lot between the Super 8 Motel and the Harbor House

whether Defendant served a portion of the four-month term for either of his misdemeanor convictions or whether Defendant served no time at all for the terms sentenced. Therefore, we remand this case so that the district court can clearly determine whether Defendant served any time, or no time, for the misdemeanor convictions.  If Defendant did not serve a single day for his misdemeanor convictions, then the district court clearly erred by assessing two points for each conviction as mandated by section 4A1.1, and Defendant's criminal history category would be reduced to III.  If, however, Defendant served at least one day of the four-month imprisonment term, then the district court did not err.  *See United States v. Glidden,* 77 F.3d 38 (2d Cir. 1996) (holding that two point assessment was proper where defendant was given suspended sentence of imprisonment and placed on probation, but subsequently had probation revoked and ordered to serve 18 days in jail); *United States v. Lewis*, 40 F.3d 1325, 1344 (1st Cir. 1994) (holding that two point assessment was proper where defendant was sentenced to five months imprisonment but only served thirty-nine days); *United States v. DePriest*, 6 F.3d 1201, 1215 (7th Cir. 1993) (holding that two point assessment was proper where defendant was ordered to serve sixty days but only served 44).

**CONCLUSION**

We conclude that the district court did not err in admitting "other acts" evidence under Rule 404(b), denying Defendant's motion to suppress and denying Defendant's motion to dismiss his indictment under the Speedy Trial Act. Accordingly, we **AFFIRM** Defendant's conviction. However, we **REVERSE** and **REMAND** for resentencing so that the district court may properly consider whether Defendant should be assessed two criminal history points for each of his prior misdemeanor convictions.

---

Defendant Murphy:    No, Sir.
The Court:            But you were sentenced with them . . .
(J.A. at 117.)

category.  Defendant contends that because the district court concluded that he did not serve any term of imprisonment for either conviction,  he should not have been assessed two points for each prior misdemeanor conviction.   The government contends that the assessment of two additional points under § 4A1.1 is proper even if Defendant did not actually serve the term of imprisonment indicated on the judgments of conviction.  This Court believes that the focus of the inquiry should be whether Defendant served *any* of the time that he was ordered to serve.

Defendant relies upon *United States v. McCrary*, 887 F.2d 485 (4th Cir. 1989), *overruled on other grounds by United States v. Underwood*, 970 F.2d 1336 (4th Cir. 1992), for the proposition that a defendant must have actually served a period of imprisonment in order for the conviction to be counted under § 4A1.1 for two points.  In *McCrary*, the defendant was sentenced to a term of imprisonment; however, the term was suspended. *Id.* at 489.  Thus, the case at hand is distinguishable from *McCrary* inasmuch as Defendant does not argue that his sentence was suspended, rather he argues that he did not serve the full four months.  However, the guidelines do mandate that a defendant must have served at least some time in order for his conviction to be considered a "sentence of imprisonment."  USSG § 4A1.2 cmt. n.2.  If Defendant has served a portion of the sentence, then for purposes of calculating a defendant's criminal history category, the focus is the actual sentence pronounced, not the length of time actually served. *See id.*

The problem here is that it is unclear from the district court's utterance,  "I give you that," in response to Defendant's objection  to  the  two-point  enhancements,[8]

---

[8]The following exchange occurred between the district court and Defendant:

Defendant Murphy:    I just want it to be known that I did not do 4 months in jail.

The Court:    Okay, I'll give you that, you didn't do 4 months in either one of them.

Restaurant.   At approximately 7:40 p.m.,  the informant walked to the Harbor House Restaurant and met Defendant in the restaurant parking lot.  When the informant and Defendant met, the task force agents heard "here's five" by way of the transmitting device.   The informant began to count the money.  Defendant advised the informant that it was not necessary for the informant to count the money because he trusted him.  Defendant then gave the informant $500 worth of crack cocaine.  Task force agents observed Defendant return to his motel room.  Thereafter, task force agents took possession of approximately 1.8 grams of crack cocaine from the informant.

While surveillance was still underway on Defendant's motel and vehicle, task force agent Larry Robbins obtained a state search warrant for Defendant's motel room and vehicle.  At approximately 10:00 p.m. that night, task force agents executed the search warrant at Defendant's motel room and seized approximately $2,671.00, $300 of which was identified as marked task force bills.  The search of Defendant's vehicle revealed an additional 7.2 grams of crack cocaine.

Defendant was not present during the search.  He had taken a cab from the Super 8 Motel.  Task force agents contacted the cab company to determine which cab Defendant had taken.  En route, the Johnson City Police stopped the cab in which Defendant was riding and arrested Defendant.  Task force agents searched the cab and found additional marked task force bills.  Defendant was searched incident to his arrest and task force agents found additional marked task force bills on his person.

On April 22, 1998, a federal grand jury returned a two-count indictment charging Defendant with distribution of cocaine base crack and possession of cocaine base crack with intent to distribute,  violations of 21 U.S.C. § 841(a)(1).  On June 5, 1998, Defendant made his first appearance before a judicial officer.  On July 2, 1998, Defendant filed a motion requesting a mental evaluation of Defendant pursuant to 18 U.S.C. § 4241.  The district court took Defendant's motion

under advisement and granted the motion on July 13, 1998. On July 31, 1998, Defendant was transported from the Eastern District of Tennessee for a mental evaluation and was returned to the Eastern District of Tennessee on October 20, 1998. On October 23, 1998, the district court conducted a competency hearing and concluded that Defendant was competent to stand trial and that Defendant was legally sane at the time of the offense.

While the competency evaluation was pending, Defendant filed a *pro se* motion seeking substitution of counsel on August 27, 1998. On October 20, 1998, the district court granted Defendant's motion and appointed new counsel.[1] In a motion filed on December 29, 1998, Defendant moved to dismiss the indictment for a violation of the Speedy Trial Act. The district court denied the motion on January 11, 1999.

Defendant's trial commenced on January 19, 1999. On the same day, the jury returned a guilty verdict on both counts. On April 12, 1999, the district court sentenced Defendant to 104 months of imprisonment to run concurrently for both counts and a three-year term of supervised release. Although the district court did not impose a fine, the district court ordered Defendant to pay a $200.00 special assessment fee. Defendant filed a timely notice of appeal.

## DISCUSSION

### I.  Rule 404(b) Evidence

### A.  Standard of Review

We employ a three-step analysis to review the district court's ruling on the admissibility of evidence under Federal Rule of Evidence 404(b). *See United States v. Merriweather*, 78 F.3d 1070, 1074 (6th Cir.1996). When reviewing whether the district court properly admitted or excluded "other crimes, wrongs, or acts" under Rule 404(b),

---

[1]Defendant's attorney had been elected to a state judgeship.

length of time between the events listed in the affidavit and the application for the warrant, while clearly salient, is not controlling." *Id*.

Here, although the affidavit provided for a five-day time period, both the information provided by the task force agent and the execution of the search occurred on the same day. Thus, contrary to Defendant's attempt to argue that the information was stale, the circumstances of this case indicate that it was not. We therefore conclude that the affidavit was sufficient to support a finding of probable cause.

### IV.  Calculation of Defendant's Criminal History Category

### A.  Standard of Review

When reviewing the calculation of sentences, we review the district court's factual findings for clear error. *See United States v. DeFranco*, 30 F.3d 664, 669 (6th Cir.1994). Questions involving the interpretation of the guidelines are legal questions that this Court reviews *de novo*. *See United States v. Partington*, 21 F.3d 714, 717 (6th Cir.1994).

### B.  Analysis

Pursuant to USSG § 4A1.1(b), two criminal history points are added to a defendant's total offense level for each prior sentence of imprisonment that consists of at least sixty days. The commentary to section 4A1.2 provides that "[t]o qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence. . . ." USSG § 4A1.2, cmt. n.2. However, criminal history points are based on the sentence pronounced, not the length of time actually served. *See id.*

In the instant case, the district court placed Defendant in criminal history category IV based on two misdemeanor convictions for which he was sentenced to four months of imprisonment. The district court added two points for each conviction in calculating Defendant's criminal history

In this case, the affidavit stated that the informant had already been working on this case with the agents at the time of the request for the warrant. The affidavit further provided that the agents had personally observed Defendant leave his motel room after speaking with the informant on the telephone, a conversation that the agents overheard. They observed Defendant walk to his red Mustang convertible in the motel parking lot, meet with the informant, a meeting they knew involved the sale by Defendant of a quantity of crack cocaine to the informant, and return to his hotel room. Viewing the totality of the circumstances, the affidavit was sufficient to support a finding of probable cause for the warrant that was issued. That Defendant has pointed out specific factual details that the task force agents could have provided in the affidavit to the magistrate does not negate a finding of probable cause; this Court does not review the sufficiency of an affidavit through such a lens. *See United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000).

Although pointed out as one of the factual shortcomings of the affidavit, Defendant also contends that the affidavit's content is insufficient to support probable cause because the information was stale, thus removing the probability that the evidence would be found in Defendant's motel room the date on which it was found. Specifically, Defendant points to the five-day time period set forth in the affidavit. However, this Court does not find that the information provided in the affidavit was stale.

In *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998), this Court recognized that the "function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate. Rather, the question of staleness depends on the inherent nature of the crime," such as the character of the crime, the alleged criminal, the thing to be seized and the place to be searched. (Quotation and citation omitted). In determining whether the information in the affidavit is stale, we must look at the circumstances of each case. *See id.* In judging the circumstances of each case, "the

we first review for clear error the district court's factual determination that the "other . . . acts" occurred. Second, we examine *de novo* the district court's legal determination that the evidence was admissible for a legitimate purpose. Finally, we review for abuse of discretion the district court's determination that the probative value of the other acts evidence is not substantially outweighed by its unfairly prejudicial effect.

*Id.* (citing *United States v. Johnson*, 27 F.3d 1186, 1190 (6th Cir. 1994)).

### B.  Analysis

Federal Rule of Evidence 404(b) reads in pertinent part:

Evidence of other crimes, wrongs, or acts, is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

FED. R. EVID. 404(b).

On appeal, Defendant argues that the district court erred by admitting "other acts" evidence in violation of Rule 404(b). First, Defendant argues that the government's reference, in its opening statement, to Defendant selling drugs to someone else on a prior occasion was improper. Second, Defendant contends that the district court erred by allowing the government to call a rebuttal witness to testify in sum and substance that he had engaged in a prior drug transaction with Defendant. Defendant's claims of error are without merit.

### 1.  Opening Statement

Although Defendant objected to the government's reference to Defendant's prior alleged drug transaction, he did not specifically object on the ground which he now attempts to

argue on appeal.**2**  To the extent that Defendant objected on any basis, he objected on the grounds that the statement assumed facts not in evidence or misstated the facts. However, he did not object based upon Rule 404(b). Therefore, Defendant has forfeited this argument. *See United States v. Buchanon*, 72 F.3d 1217, 1226-27 (6th Cir. 1995) (holding that defendant forfeited argument on appeal by failing to raise argument with specificity); *United States v. Yannott*,  42 F.3d 999, 1005 (6th Cir. 1994).  Our review is therefore limited to the plain error standard.  *See United States v. Reed*, 167 F.3d 984, 988-89 (6th Cir. 1999) ("'The 'plain error' rule also applies to a case, such as this, in which a party objects to [an evidentiary determination] on specific grounds in the trial court, but on appeal the party asserts new grounds challenging [that determination].'") (quoting *United States v. Evans*, 883 F.2d 496, 499 (6th Cir. 1989)) (alterations in original). "Plain errors are limited to those harmful ones so rank that they should have been apparent to the trial judge without objection, or that strike at fundamental fairness, honesty, or public reputation of the trial." *Evans*, 883 F.2d at 499 (citation and quotations omitted).  We find no such error in the instant case.

After Defendant's attorney objected, the court asked the government attorney if the statement concerning the prior drug transaction was related to the case and then proceeded to give the jury the following cautionary instruction:

---

**2**During his opening statement to the jury, the government attorney states:

> What the government believes the evidence will show in the trial of [Defendant] is this: sometime prior to the 17th of September 1997, confidential informant came to Mr. Larry Robbins and said, [Defendant] is selling crack cocaine, and I can buy it from him.  Based upon that information, Mr. Robbins wired up the confidential informant.

(J.A. at 92).  At that point, counsel for Defendant objected on the ground that the government was *"making a reference to something that's not part of this case as far as anything that may have happened, the informant comes to Robbins."*  *Id.*  (emphasis added.)

subject within the last five days while working under the direction of the 1st Jud. Drug Task Force.  Prior to the transaction agents observed B/m Lee leave the motel after speaking to the informant on the phone and walk to his vehicle[,] a red Mustang convertible which was parked on the lot of the Super 8 Motel[,] and then met with the informant and sold the informant a quantity of crack cocaine.  The B/m Lee was then observed entering the Super 8 Motel.

(J.A. at 38.)  Defendant's contentions appear to be that 1) a single isolated sale is not sufficient to establish probable cause that illegal activity is continuing on the property; 2) the affidavit is not supported by any information showing that Defendant possessed additional drugs after his sale to the informant; 3) the five-day period is too long a period to support a search of the premises; 4) the affidavit fails to state the quantity of drugs allegedly purchased; and, 5) the affidavit does not state the room in which the named person was alleged to have entered or the license plate number of the car. Defendant's contentions are without merit, especially after the decision, however ill-advised, in *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000) (*en banc*).

In *Allen*, the defendant challenged the sufficiency of the affidavit underlying a search warrant.  The affidavit was based upon the personal observation of alleged criminal activity by a confidential informant who had been named to the magistrate and who had provided reliable information to the police in the past about criminal activity.  The affidavit, however, did not specify the type of activity about which the informant had previously given reliable information. *See id.* at 971.  In *Allen*, an affidavit supported by statements of a confidential informant who had previously given reliable information--without regard to type of information previously given and without corroboration of the allegations underlying the affidavit--was deemed sufficient to support a finding of probable cause in this Circuit. *See id.*

"magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for police." *Aguilar v. Texas*, 378 U.S. 108, 111 (1964), *overruled on other grounds by Illinois v. Gates*, 462 U.S. 213 (1983). Accordingly, "[d]eference to the [issuing] magistrate . . . is not boundless." *Weaver*, 99 F.3d at 1376 (quoting *United States v. Leon*, 468 U.S. 897, 914 (1984)). Finally, the general remedy for a Fourth Amendment violation is that the evidence obtained due to the unconstitutional search or seizure is inadmissible, including both evidence obtained as a direct result of the unconstitutional search and seizure and evidence that is considered fruit of the poisonous tree. *See United States v. Dice*, 200 F.3d 978, 983 (6th Cir. 2000).

## B. Analysis

"[N]o Warrants shall issue, but upon probable cause, supported by oath or affirmation . . . ." U.S. CONST. amend. IV. "The test for probable cause is simply whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996); *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993). In *Illinois v. Gates*, the Supreme Court embraced a totality-of-the-circumstances test to determine if probable cause exists, requiring the issuing magistrate to "make a practical, common sense, decision . . . given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." 462 U.S. at 238.

On appeal, Defendant contends that the affidavit underlying the warrant was insufficient to support a finding of probable cause. We disagree.

The affidavit in the case at hand provided the following information:

A confidential and reliable informant who has in the past given agents of the 1st Jud. Drug Task Force reliable information which has resulted in arrests with convictions has purchased crack cocaine from the listed

He [the government attorney] says it is, we'll have to wait and see. I don't know. We'll have to wait and see. You be cautious, listen to what is said. This is opening statement by both the government and the defendant. *It's not proof, it's allegations. It doesn't mean anything.* The only way it's going to mean anything is on the witness stand and the law that I tell you the way it is. I'm not belittling the fact that they need to make an opening statement, I'm just telling you that so you can take it and work from it.

(J.A. at 92.) (emphasis added). In this case, the district court's cautionary instruction regarding the opening statements was adequate to apprise the jury of the limited purpose for which the allegations of Defendant's prior act was to be considered. Because it is presumed that the jury will follow the instruction correctly as given, *see United States v. Tines*, 70 F.3d 891, 898 (6th Cir. 1995) (citing *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993)), and absent any evidence to the contrary, there is no indication that the jury improperly considered the opening statement. Moreover, there was nothing about that statement that would automatically alert the judge that an error had been made nor did the statement strike at the fundamental fairness or public reputation of the trial. Thus, Defendant's claim of error must fail.[3]

---

[3]The government contends that the reference to the confidential informant was proper background information, citing *United States v. Aguwa*, 123 F.3d 418, 421 (6th Cir. 1997). This Court agrees. The government also contends that the reference to the confidential informant and Defendant was not a reference to a prior bad act. This contention, however, is not well taken. The rule of evidence concerning prior misconduct of the defendant relates not only to prior crimes, but to any conduct of the defendant which may bear adversely on the jury's judgment of his character. *See United States v. Cooper*, 577 F.2d 1079, 1087-88 (6th Cir. 1978).

## 2. Rebuttal Witness

Defendant also contends that the district court impermissibly allowed the testimony of a rebuttal witness offered by the government in violation of Rule 404(b). Although Defendant objected to the admission of "other acts" evidence during his cross examination under Rule 404(b), it appears that on appeal, Defendant is arguing that it was improper to allow testimony of a rebuttal witness called to refute a portion of Defendant's testimony. To the extent that he argues it was error to allow the rebuttal witness to testify, Defendant has forfeited this argument on appeal because he did not object to the rebuttal witness's testimony at trial. *See* discussion *supra* Part I.B.1.

Turning to the 404(b) objection, the following exchange occurred during the cross-examination of Defendant:

| | |
|---|---|
| Government attorney: | Now, this drug transaction on the 17th of September isn't your first crack cocaine drug transaction; is it? |
| Defendant: | Excuse me |
| Government attorney: | It isn't your first dealing with crack cocaine; is it? |
| Defendant's attorney: | I object to that for reasons I previously stated to the court. |
| The Court: | Well, has he been convicted of it is the question; isn't it? |
| Government attorney: | No, your honor, I'm asking him if he has engaged in other crack cocaine deals prior to the 17th day of September |
| The Court: | Okay. Why do you object to it? |
| Defendant's attorney: | It's not admissible under Rule 404(b), your honor. |
| Government attorney: | Your, honor, it is admissible under Rule 404(b) |

Although it was certainly capable of doing so, Congress gave no indication that 18 U.S.C. § 4247(b) modifies section 3161(h)(1)(A). Moreover, there is no compelling reason that the two statutes be linked. We refuse, therefore, to find a limitation where Congress did not expressly create one.

*Id.* at 1285 (citations omitted). The reasoning of the Seventh and Ninth Circuits is persuasive. We therefore conclude that § 4247(b) does not limit the time excludable under the Speedy Trial Act for mental competency examinations.

## 4. Request for New Counsel

Defendant next argues that the time that was needed to obtain new counsel for him should not be excluded for purposes of the Speedy Trial Act. However, 18 U.S.C. § 3161(h)(1)(F), which provides for excludable delay "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," dictates that this time is excluded. *See United States v. Taylor,* 196 F.3d 854, 861 (7th Cir. 1999) (observing that it was proper to exclude time from calculation where Defendant requested new counsel).

## III. Suppression of Evidence

## A. Standard of Review

When reviewing the denial of a motion to suppress, we review a district court's factual findings for clear error, while conclusions of law are reviewed *de novo*. *See United States v. Smith*, 73 F.3d 1414, 1416 (6th Cir. 1996). Moreover, the evidence must be viewed in the light most favorable to the government. *See United States v. Walker*, 181 F.3d 774, 776 (6th Cir. 1999). We give great deference to the determinations of probable cause made by a magistrate judge, whose findings "should not be set aside unless arbitrarily exercised." *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1998) (citing *United States v. Pelham*, 801 F.2d 875, 877-78 (6th Cir. 1986)). We, nevertheless, insist that the

competency report by court is excludable); *United States v. Neal,* 27 F.3d 1035, 1042 (5th Cir. 1994) (excluding time period between the date motion for competency examination was filed and the date defendant was found competent to stand trial); *United States v. Miranda*, 986 F.2d 1283, 1284 (9th Cir. 1993) (excluding 106-day period during which the competency evaluation was being prepared).

Further, Defendant's contention that a mental competency examination may only last forty-five days pursuant to 18 U.S.C. § 4247(b) must also fail. Every court that has decided this issue has concluded that § 4247(b) does not limit the time period for a competency examination with respect to calculations under the Speedy Trial Act. For instance, in *United States v. Fuller*, 86 F.3d 105 (7th Cir. 1996), the Seventh Circuit specifically addressed whether § 4247(b) limited the exclusion of time under the Speedy Trial Act. In concluding that it did not, the court stated "[t]o put the two statutes together, borrowing the 30 and 45 day limits from the commitment statute for interpolation into the limitless delay provision of the Speedy Trial Act, would be an audacious bit of judicial creativity--and to no purpose that we can see." *Id.* at 106.

In *Miranda*, the defendant argued that section 4247(b) limited the time that can be excluded for a competency examination under section 3161(h)(1)(A) of the Speedy Trial Act to forty-five days. 986 F.2d at 1284-85. In rejecting the defendant's argument, the Ninth Circuit stated:

> The plain language of the Speedy Trial Act gives no indication that an exclusion for a competency evaluation must be so limited. To the contrary, section 3161(h)(1)(A) expressly excludes "any period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant."

The Court:                    Well, one and one. I believe it's admissible too, so you may ask it.

(J.A. at 112-13.)

At this point, Defendant's attorney appears to have dropped the ball. He did not ask the Court to engage in a Rule 404(b) analysis, nor did he offer any support for his claim that even if the prior act should be admitted for a proper purpose—proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident—admitting the evidence would have been more prejudicial than probative.

The *Merriweather* Court has explained the process for Rule 404(b) objections as follows:

> Upon objection by the defendant, the proponent of the evidence, usually the government, should be required to identify the specific purpose or purposes for which the government offers the evidence of "other crimes, wrongs, or acts." By so requiring, we do not mandate hypertechnicality. It is true that whether 404(b) evidence is admissible for a particular purpose will sometimes be unclear until late in the trial because whether a fact is "in issue" often depends on the defendant's theory and the proofs as they develop. Nevertheless, the government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove.
>
> After requiring the proponent to identify the specific purpose for which the evidence is offered, the district court must determine whether the identified purpose, whether to prove motive or intent or identity some other purpose, is "material"; that is, whether it is "in issue" in the case. If the court finds it is, the court must then determine, before admitting the other acts evidence, whether the probative value of the evidence is

substantially outweighed by the danger of unfair prejudice under Rule 403. If the evidence satisfies Rule 403, then, after receiving the evidence, the district court must "clearly, simply, and correctly" instruct the jury as to the specific purpose for which they may consider the evidence.

78 F.3d at 1076-77. As the record evinces, such an analysis did not occur. Thus, it appears that the district court improperly failed to analyze the "other acts" evidence before allowing the jury to hear the evidence.

Nevertheless, this Court finds that any error, if any, in admitting evidence of "other acts" is harmless in light of the overwhelming evidence of Defendant's guilt. *See United States v. Layne*, 192 F.3d 556, 573 (6th Cir. 1999) (applying harmless error analysis where government presented other convincing or overwhelming evidence aside from "other acts" evidence). An error is harmless unless one can say, with fair assurance that the error materially affected the defendant's substantial rights--that the judgment was substantially swayed by the error. *See Kotteakos v. United States*, 328 U.S. 750, 765 (1945); *Johnson*, 27 F.3d at 1194 (concluding that erroneous admission of evidence under FED.R.EVID. 404(b) was harmless error); *see also United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995) (reasoning that although the trial court failed to explicitly evaluate the evidence under 404(b), the error is harmless if the purpose for admitting the evidence is apparent from the record and the admission was proper). "In determining whether an error is harmless, we must take account of what the error meant to [the jury], not singled out and standing alone, but in relation to all else that happened." *United States v. Cowart*, 90 F.3d 154, 158 (6th Cir. 1996) (citations and quotations omitted).

Here the evidence is overwhelming. The record clearly shows that Defendant was identified as the individual who sold the drugs to the informant by task force agents who observed Defendant walk to his red Mustang and meet with the informant. Moreover, those agents, who knew the

evaluation unless an extension is requested.[7] Defendant asserts that an extension was not requested in the case at hand.

We note that Defendant fails to point this Court to any evidence in the record demonstrating the dates upon which he was transported to and from the facility where the examination was conducted or the actual dates that Defendant was admitted or released from the facility. We also conclude that Defendant's contention is without merit. We have not addressed this specific issue; however, every other circuit that has addressed the issue has concluded that time associated with mental competency examinations are excluded from the Speedy Trial clock. *See United States v. Noone*, 913 F.2d 20, 25-27 (1st Cir. 1990) (holding that exclusion of time begins when motion to determine competency is filed and ends when competency hearing is concluded); *United States v. Vasquez*, 918 F.2d 329, 333 (2d Cir. 1990) (holding that ten month delay between motion for psychiatric exam and receipt of

---

[7] 18 U.S.C. § 4247(b) provides:
Psychiatric or psychological examination.--A psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, or, if the court finds it appropriate, by more than one such examiner. Each examiner shall be designated by the court, except that if the examination is ordered under section 4245 or 4246, upon the request of the defendant an additional examiner may be selected by the defendant. For the purposes of an examination pursuant to an order under section 4241, 4244, or 4245, the court may commit the person to be examined for a reasonable period, but not to exceed thirty days, and under section 4242, 4243, or 4246, for a reasonable period, but not to exceed forty- five days, to the custody of the Attorney General for placement in a suitable facility. Unless impracticable, the psychiatric or psychological examination shall be conducted in the suitable facility closest to the court. The director of the facility may apply for a reasonable extension, but not to exceed fifteen days under section 4241, 4244, or 4245, and not to exceed thirty days under section 4242, 4243, or 4246, upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant.
18 U.S.C. § 4247(b).

be suffering from a mental disease or defect that renders him mentally incompetent to the extent that he is unable to assist properly in his defense." (J.A. at 22.)  The analysis of our sister circuit's decision in *Antwine* is logical and sound; therefore, we conclude that Defendant cannot rely on an alleged disagreement with his attorney regarding the efficacy of a mental competency exam, which is ultimately conducted in his best interest, to later challenge his indictment under the Speedy Trial Act on the basis of delays caused by the competency examination.  This is especially so considering the record indicates that Defendant raised no objections to the examination prior to his motion to dismiss his indictment.  Accordingly, the time associated with Defendant's mental competency examination should be excluded from the computation of the seventy-day period under the Speedy Trial Act.

### 3.  Length of Mental Competency Examination

Defendant also contends that the Speedy Trial Act only allows a maximum of fifty-five days for purposes of completing mental competency examinations.  Defendant reaches this conclusion by relying upon two statutory provisions.  First, Defendant cites § 3161(h)(1)(H) for the proposition that a total of ten days can count as excludable time for transportation "to and from" the place of examination and that any other delay is "presumed to be unreasonable."[6] Second, Defendant cites 18 U.S.C. § 4247(b) for the proposition that there is a forty-five-day limit for a mental

---

[6] 18 U.S.C. § 3161(h)(1)(H) provides that
delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable . . .
18 U.S.C. § 3161.

---

purpose of the meeting was to conduct a drug transaction, observed Defendant return to his hotel room.  The agents later seized marked money and crack cocaine from Defendant as well as marked money from his hotel room.  In light of the evidence against Defendant and the small potential for prejudice in this case, the admission of the evidence of an alleged prior transaction, even if erroneous, is harmless.

## II.  Speedy Trial Act Violation

### A.  Standard of Review

This Court recognizes that the standard of review is not at all clear for claims brought under the Speedy Trial Act.  *Cf. United States v. Robinson*, 887 F.2d 651, 656 (6th Cir. 1989) (applying *de novo* standard of review); *United States v. Mentz*, 840 F.2d 315, 325-32 (6th Cir. 1988) (same).  *But cf. United States v. Robinson*, 23 F.3d 1010, 1012 (6th Cir. 1994) (applying abuse of discretion standard of review); *United States v. Monger*, 879 F.2d 218, 221 (6th Cir. 1989) (same).  Because the issues presented in this case are more similar to the issues presented in *Robinson,* 887 F.2d at 656, we will apply the *de novo* standard of review.[4]

### B.  Analysis

The Speedy Trial Act, 18 U.S.C. §§ 3161-3174, requires that a defendant be brought to trial within seventy days from the date of arrest, the filing of the indictment or information, or the first appearance before the court, whichever is later. *See* 18 U.S.C. § 3161(c).  Failure to bring a defendant to trial within the seventy-day period results in the dismissal of the indictment with or without prejudice.  *See* 18 U.S.C. § 3162(a)(2).  However, certain delays that arise before trial are  excluded from the seventy-day period.  *See* 18 U.S.C.

---

[4] Defendant has not taken a position as to the appropriate standard of review.  The government, however, acknowledges that the issues presented in this case should be reviewed *de novo*.  *See* Appellee's Br. at 16.

§ 3161(h).  When filing a motion to dismiss the indictment based on a violation of the Speedy Trial Act, "[t]he defendant shall have the burden of proof."  18 U.S.C. § 3162(a)(2).

Here, Defendant contends that the district court improperly concluded that there was no Speedy Trial Act violation and should have dismissed his indictment.  Defendant claims the following Speedy Trial Act violations:  1) the government "knowingly and improperly waited" until April 22, 1998 to indict him; 2) Defendant personally objected to his defense counsel filing a pre-trial motion on his behalf requesting a mental competency exam, therefore time associated with the exam should not be excluded from the calculation; 3) the period of time excluded for the mental competency examination violated the number of days available within which the examination must be completed and violated statutory restrictions for the number of days available to transport defendant to and from the facility; and 4) Defendant's inquiry regarding new counsel should not be counted as a *pro se* motion, the time for which is excluded from the seventy-day calculation.  We   address each of Defendant's contentions in turn.[5]

### 1.  Date of Indictment

Defendant first contends that the government impermissibly waited to indict him.  Defendant argues that because he was indicted in state court on September 17, 1997, the Speedy Trial clock should have begun to tick on that date rather than April 22, 1998 when he was indicted on federal charges.

---

[5]Defendant also alleges that his rights were violated under the Fifth and Sixth Amendments.  However, Defendant fails to even argue, not to mention cite any case law for his alleged Fifth and Sixth Amendment right violations.  *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 370 (6th Cir.1998) (noting that claims not pursued on appeal will typically be considered abandoned).  Therefore, Defendant has forfeited review of his claims by this Court.  *See Reed*, 167 F.3d at 993 (holding that issues raised by an appellant in a perfunctory manner, unaccompanied by some effort at developed argumentation, are considered abandoned); *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996).

Defendant therefore argues that he was indicted well outside the thirty-day period mandated by § 3161(b), which requires that a defendant be formally charged within thirty days of his arrest.  Defendant's contention has absolutely no basis in law and is without merit.  It is well established in this Circuit that the thirty-day time limit is not triggered until there is a federal "arrest."  *See United States v. Blackmon*, 874 F.2d 378, 381 (6th Cir. 1989) ("A defendant is not 'arrested' for purposes of the Speedy Trial Act until formal federal charges are pending."); *United States v. Copley*, 774 F.2d 728 (6th Cir.1985). Therefore, we reject Defendant's contention out of hand.

### 2.  Defendant's Objection to Competency Examination

Defendant next contends that because he objected to his lawyer's motion that he undergo a mental competency examination, any time associated with the mental competency examination should not be excluded from the calculation of the seventy-day period for purposes of determining whether a Speedy Trial Act violation occurred.  In *United States v. Antwine,* 873 F.2d 1144, 1149 n.9 (8th Cir. 1989), the court noted that a defendant's disagreement with his defense counsel's decision to file a motion for a competency examination did not affect computations calculated under the Speedy Trial Act.  The Eighth Circuit also noted that the district court's decision to order a mental competency examination was based on the personal observations of the district court.  *Id*.  Moreover,  a defendant may not complain of delays occasioned by the trial court's attempt to protect his interests.  *Id*. at 1150.

Here, the district court held a hearing on July 9, 1998, at which evidence was presented in support of the motion for a mental competency examination by defense counsel and a Deputy United States Marshal.  Additionally, the magistrate judge conducted a hearing with Defendant outside the presence of counsel for the government.  On July 13, 1998, the magistrate judge entered an order finding that "there is reasonable cause to believe that the defendant may presently